IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA
*Ex rel.* MAVERICK GRANGER,

                        Plaintiff,

v.                                            No. CIV-_____

                                                              JURY DEMANDED

PC SPECIALISTS, INC., d/b/a
TECHNOLOGY INTEGRATION
GROUP, a California Corporation,

                        Defendant.

**COMPLAINT FOR DAMAGES AND PENALTIES FOR VIOLATION
OF THE FALSE CLAIMS ACT**

Relator Maverick Granger ("Granger"), on behalf of the United States of America, brings this complaint for treble damages and penalties for violations of the False Claims Act, 31 U.S.C. §§ 3729-33, and alleges:

**I.    Parties, Jurisdiction and Venue**

1. Relator Granger was until May 27, 2014 a Branch Manager for Defendant PC Specialists, Inc., d/b/a Technology Integration Group ("TIG") and was responsible for the operation of TIG's Albuquerque, New Mexico, Oak Ridge, Tennessee and Livermore, California branches.

2. TIG is a California for profit corporation with its principal place of business in San Diego, California. TIG is a national, full-service computer systems integration firm and provides services in the areas of advanced systems integration, network planning and product procurement to private businesses and government agencies and instrumentalities throughout the United States and internationally. At times material to the matters alleged in this complaint,

1

among other contracts in New Mexico, TIG had contracts with the entities charged with operating Sandia National Laboratory, Los Alamos National Laboratory, Lawrence Livermore National Laboratory, Oak Ridge National Laboratory, and other NNSA sites on behalf of the United States Department of Energy ("DOE").

3. The matters alleged in this complaint concern TIG's contracts to provide goods and services for the benefit of Sandia National Laboratory ("SNL") and the ultimate beneficiary of those goods and services was the United States Government.

4. This Court has jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §§ 1331 and 1345.

5. Venue is proper in this District pursuant to 31 U.S.C. § 3732 in that TIG transacts business in this District.

**General Allegations**

6. At all times material hereto TIG was party to a "Just-In-Time" contract (the "Contract") with Sandia Corporation, the operator of SNL on behalf of DOE, to provide Dell Computer Corporation ("Dell") products to SNL.

7. The Contract, or predecessor contracts with substantially identical material terms, has been in effect for at least ten (10) years.

8. Among other things, the Contract required that any manufacturer rebates from Dell generated on TIG's sales to SNL be credited to SNL and applied to the product cost to reduce the overall price that SNL paid for Dell products under the Contract.

9. TIG is and at all material times was a member of Dell's General Services Administration ("GSA") Partner Program and a supplier of DOE Integrated Contractor Purchasing Team ("ICPT") pricing, a program that gives U.S. government agencies such as SNL

a way to both purchase Dell products at discounted prices and at the same time meet their small business mandates by conducting their purchasing through a small business such as TIG.

10. As a part of the GSA Partner Program, TIG received special pricing from Dell for products purchased on behalf of SNL pursuant to the Contract and those prices were more favorable than prices received by other Dell federal resellers.

11. Additionally, as a part of the GSA Partner Program, Dell provided TIG "back-end" dollars or rebates based on the sales volume of Dell products generated by TIG to SNL.

12. Dell required that a specified percentage of the rebates it provided to TIG pursuant to the GSA Partner Program be spent by TIG on marketing Dell products to DOE facilities.

13. Following Relator Granger's employment as the Branch Manager of TIG's Albuquerque branch in approximately April 2013, Granger was involved in an audit of TIG's contract with SNL. In the course of that audit, Granger discovered from Dell that it had been providing rebates to TIG on TIG's sales of Dell products to SNL on a regular basis.

14. Granger found that rebates paid to TIG by Dell pursuant to the GSA Partner Program were paid directly to TIG's corporate office in San Diego, California rather than being remitting to TIG's Albuquerque office, where the sales that generated the rebates originated.

15. After reviewing the TIG contract with SNL, Granger determined that SNL should have been receiving the rebates and that the rebates should have been credited to SNL to reduce the price it paid for Dell products.

16. On several occasions Relator Granger raised his concern regarding TIG's failure to credit SNL with the Dell rebates with superiors at TIG, including his supervisor Jeff Lunsford, Vice President DOE & Strategic Sales.

17.     On each occasion that he raised these concerns Granger was rebuffed by TIG. Granger was told by his Supervisor that he was unwilling to take his concern to Bruce Geier, TIG CEO, who was receiving the rebates directly from Dell.

18.     Granger also raised his concerns with an official in TIG's marketing department, but was similarly rebuffed.

19.     Granger then raised his concerns with his supervisor's superior and was terminated by TIG a few days later.

20.     Granger was terminated by TIG in May 27, 2014 for raising these and other concerns about TIG's improper sales, billing and contract administration practices with regard to contracts with DOE customers.

21.     Each time Dell paid TIG rebates based on TIG's sales of Dell products to SNL, TIG failed to credit the portion of the rebate not spent on marketing to SNL to reduce the overall price that SNL paid for Dell products under the Contracts.

22.     The portions of all rebates paid by Dell to TIG on account of sales by TIG of Dell products to SNL that were not spent on marketing Dell products were retained by TIG for its own purposes and were not disclosed to or paid to SNL as required by the Contracts.

23.     TIG management was and is aware of the requirement under the Contracts to credit SNL with the value of all Dell rebates, but made a deliberate decision not to do so.

24.     TIG's sales of Dell products to SNL were substantial. For fiscal year 2013 sales to SNL were approximately thirty million dollars ($30,000,000).

25.     Dell rebates on those sales were also substantial and amounted to well over one million dollars ($1,000,000) per year for each year that the Contracts have been in existence. Although those sums rightfully belong to the U. S. Government, they have been retained by TIG.

**Count I – Violation of False Claims Act**

26. Relator incorporates by reference paragraphs 1 – 25 of this Complaint.

27. The Contract required that rebates paid to TIG by Dell based on sales of Dell products to SNL be paid or credited to SNL and applied to the product cost to reduce the overall price that SNL paid for Dell products under the Contract.

28. Under the Contract, if SNL had already paid TIG for the Dell products that were the subject of a rebate, the rebate reduced the cost of the products to TIG and therefore required TIG to pay the rebate over to SNL.

29. TIG received rebates from Dell based on sales under the Contract on a regular basis and numerous times during the life of the Contract.

30. Each time TIG received a rebate from Dell for sales under any of the Contract it was required to credit the rebate against the cost of the Dell products sold to SNL and pay that rebate over to SNL.

31. Each time that TIG received a rebate from Dell for sales under the Contract it retained those monies for itself and failed to credit them against the cost of the Dell products sold to SNL and pay them over to the U.S. Government.

32. Each time it failed to pay Dell rebates over to the U. S. Government, TIG violated 31 U.S.C. §3729(1)(B) in that TIG certified to the U.S. Government that it was in compliance with its obligations under the Contract and provided false and incomplete information regarding the true price of Dell products sold to the Government or failed to correct incomplete and inaccurate information regarding the true price of Dell products sold to the Government.

33. Each time it failed to pay Dell rebates over to the U. S. Government, TIG violated

31 U.S.C. §3729(1)(D) in that TIG had possession of funds belonging to the U. S. Government and, intending to defraud the U.S. Government, caused to be delivered to the U. S. Government less than all of that money.

34. Each time it failed to pay Dell rebates over to the U. S. Government, TIG violated 31 U.S.C. §3729(1)(G) in that it knowingly made false statements material to an obligation to pay money to the U. S. Government and knowingly concealed that obligation to pay money to the U. S. Government by failing to disclose the existence and extent of the Dell rebates it received and it obligation to pay those rebates to the U. S. Government.

35. Each time it failed to pay Dell rebates to the U. S. Government, TIG intended to deprive the Government of amounts it knew were rightfully due to and were the property of the Government and to defraud the Government of those sums.

36. Each time it failed to disclose to the U. S. Government the Dell rebates paid to it, TIG intended to defraud the Government.

37. Each time it failed to correct the cost of products sold to the Government to reflect the value of the Dell rebates paid to it, TIG intended to deceive the Government regarding the actual cost of those products and to retain the rebates for its own benefit.

38. The amounts of the rebates Dell paid to TIG over the years of the Contract amounts to many millions of dollars and are reflected in the records of both TIG and Dell..

39. Pursuant to 31 U.S.C. §3729, TIG is liable to the United States Government for all available statutory penalties as well as three times the damages the Government has sustained as a result of the wrongful acts of TIG.

40. Pursuant to 31 U.S.C. §3729, Relator is also entitled to his reasonable expenses, attorneys' fees and costs incurred in bringing this action.

**Prayer for Relief**

Relator prays for judgment as follows:

A. For all available and applicable statutory penalties due to TIG's wrongful acts;

B. For three times the amount of damages sustained by the United States Government due to TIG's wrongful acts;

C. For reasonable expenses, attorneys' fees and costs incurred in bringing this action; and

D. For such further relief as may be just and proper.

**Jury Demand**

Plaintiff demands trial by jury on all issues triable of right by jury.


Respectfully submitted,

MOODY & WARNER, P.C.

By: */s/ Christopher M. Moody 7.10.2014*
      Christopher M. Moody
4619 Montgomery Blvd. NE
Albuquerque, NM 87109
(505) 944-0033
(505) 944-0034 (fax)
*Attorneys for Relator*